IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNABOOKS, LLC,<br><br>    Plaintiff,<br><br>   v.<br><br>ISSUU, INC.,<br><br>    Defendant. | Case No. 20-cv-04271-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

In this copyright action, Plaintiff Annabooks, LLC alleges that a third party uploaded a pirated copy of its copyrighted textbook to Defendant Issuu, Inc.'s online library in September 2018. In May 2020, after discovering the copy on Issuu's website, Annabooks submitted a Digital Millennium Copyright Act ("DMCA") takedown notice to Issuu. Several days later, Issuu removed the copy. Annabooks then brought suit against Issuu for direct infringement, vicarious liability for infringement, and contributory liability for infringement.

Issuu now moves to dismiss Annabooks' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Issuu argues that the DMCA's safe harbor protections immunize Issuu from liability. Second, Issuu argues that Annabooks' allegations are insufficient to plausibly allege each of its three claims. Because the Complaint is in fact insufficient, this Court GRANTS Issuu's Motion to Dismiss.

I.  **BACKGROUND**

    A.  **Plaintiff Annabooks, LLC**

Plaintiff Annabooks, LLC is the publisher of "Java and Eclipse for Computer Science," a textbook by Sean D. Liming and John R. Malin ("the Work"). Compl. (dkt. 1) ¶ 8. The Work was published on September 25, 2018. Compl. Ex. A. Annabooks obtained registration from the U.S.

Copyright Office in October 2018 and owns all rights and privileges in and to the Work. Id.

### B. Defendant Issuu, Inc.

Defendant Issuu, Inc. operates an online library of digital works submitted by third-party users. Compl. ¶ 9; see also MTD (dkt. 17) at 2. Users can view these works on, and sometimes download them from, Issuu's website. Id. Issuu generates revenue by charging users to download certain works. Id. Issuu also generates revenue by selling advertising and paid subscriptions, though users need not subscribe to use its website. Opp'n at 2; Reply at 6.

### C. The Conflict Between the Parties

Annabooks alleges that a pseudonymous Issuu user named "Medjitena Nadir" ("Nadir") obtained a digital copy of the Work from Amazon.com. Compl. ¶ 10.[1] Annabooks alleges that Nadir then uploaded his copy of the Work to Issuu, representing that he was the author. Id. ¶ 11; see also Compl. Ex. D (depicting a screenshot of the Work on Issuu's website that indicates that "Medjitena Nadir" "[p]ublished" the Work to Issuu on September 28, 2018). Annabooks alleges that Issuu then allowed its users to view and download copies of the Work, from which Nadir and Issuu allegedly profited. Compl. ¶ 12.

Annabooks discovered Nadir's copy of the Work on Issuu in May 2020. Id. ¶ 17. On May 5, 2020, Annabooks sent Issuu a DMCA takedown notice asking Issuu's Designated Agent to disable and remove the Work. Id. Ex. E. Issuu removed Nadir's copy of the Work "[w]ithin a few days." Id. ¶ 18.

### D. Procedural History

Annabooks filed suit against Issuu under the Copyright Act, bringing one count of direct infringement, one count of vicarious liability for infringement, and one count of contributory liability for infringement. Id. ¶¶ 19–33. Issuu now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing first that the DMCA shields Issuu from liability, and second that Annabooks' allegations are insufficient to state a plausible claim for relief for each of its three claims. See MTD at 1–2.

---

[1] Nadir is party to the action as Defendant Doe 1 because Nadir is "a person whose true name is unknown." Compl. ¶ 6.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  To survive a 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.  When evaluating a 12(b)(6) motion, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

"[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense." Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotations omitted).  But plaintiffs "ordinarily need not plead on the subject of an anticipated affirmative defense." Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013) (internal quotations omitted).  In other words, a defendant can raise an affirmative defense in a 12(b)(6) motion only when that defense is "obvious on the face of [the] complaint." See id.  For a 12(b)(6) motion to prevail on an affirmative defense, the plaintiff must "plead itself out of court" by "admit[ting] all the ingredients." Durnford v. MusclePharm Corp., 907 F.3d 595, 603 n.8 (9th Cir. 2018) (quoting Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004)).

## III. DISCUSSION

Issuu offers two independent arguments for dismissal.  See MTD at 1–2.  First, Issuu argues that the DMCA protects Issuu from liability, and second, Issuu argues that Annabooks' allegations are insufficient to state a plausible claim for relief.  See id.

### A. DMCA Safe Harbor Defense

First, Issuu argues that the Court should dismiss Annabook's complaint because the DMCA safe harbor provision shields Issuu from liability.  See MTD at 4.  A service provider qualifies for DMCA safe harbor protections when the provider either lacks actual knowledge of

3

infringement or "is not aware of facts or circumstances from which infringing activity is apparent"; does not receive a financial benefit directly attributable to the infringing activity; and "expeditiously" acts to remove infringing material upon notification. 17 U.S.C. § 512(c). Issuu argues that it has met "all the requirements" for DMCA safe harbor protection and thus the Court must dismiss Annabooks' claims. MTD at 5.

But whether Issuu has met the requirements for safe harbor protection is not the precise question. For Issuu's 12(b)(6) motion to prevail on this basis, Issuu must show not only that it ultimately would establish a successful safe harbor defense, but also that Annabooks' Complaint "admit[s] all the ingredients" of that defense. See Durnford, 907 F.3d at 603 n.8.

The facts alleged in Annabooks' Complaint are, by themselves, insufficient to establish Issuu's affirmative DMCA safe harbor defense. See generally Compl. Even if this Court does take judicial notice of the documents that Issuu references in its Request for Judicial Notice, factual disputes remain between the parties that, at this stage, must be resolved in the nonmoving party's favor, and these facts would invalidate Issuu's DMCA defense. See Usher, 828 F.2d at 561.

For example, Annabooks alleges that Issuu derived revenue from its publication of the Work. Compl. ¶ 9; see also 17 U.S.C. § 512(c)(1)(B) (establishing that a service provider is not liable under the DMCA where the provider "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity"). Annabooks also alleges that Nadir's posting of "a hundred other works besides Plaintiff's, all of which are obviously pirate copies of works" constitutes a "red flag" that should have made Issuu aware of infringing activity consistent with § 512(c)(1)(A)(ii). Compl. ¶¶ 13–15.

Because this is a 12(b)(6) motion, these factual disputes require resolution in Annabooks' favor. And Annabooks had no obligation to plead in anticipation of Issuu's affirmative defense. See Rivera, 735 F.3d at 902. While there may be a high bar to finding "red flag" knowledge in the Ninth Circuit, MTD at 7, this is not the time to determine that bar is not satisfied. Such a determination requires interpretation and application of law beyond the four corners of Annabooks' Complaint.

1    Although Issuu identifies much support for a safe harbor defense later on, Annabooks has

2    not "ple[]d itself out of court" where necessary elements remain disputed.  See Durnford, 907 F.3d

3    at 603 n.8.  Ultimately, because "DMCA's safe harbors are affirmative defenses and not relevant

4    to whether Plaintiff has adequately pled a claim for copyright infringement," Nintendo of Am.,

5    Inc. v. Storman, No. CV 19-7818-CBM-RAO(x), 2020 U.S. Dist. LEXIS 86846, at *7 (C.D. Cal.

6    Jan. 15, 2020), this Court does not grant Issuu's 12(b)(6) motion on the basis of its putative safe

7    harbor defense.

### B.     Failure to State a Claim

Independent of its first argument, Issuu argues that Annabooks' Complaint "fails to adequately allege at least one element necessary to state [each] claim."  MTD at 11.

#### 1.     Direct Infringement

To establish a prima facie case of direct infringement, a plaintiff "must show ownership of the allegedly infringed material" and "must demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106."  Marder v. Lopez, 450 F.3d 445, 453 (9th Cir. 2006) (quoting A&M Records v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001)).  Direct infringement also requires that the plaintiff show "volitional conduct" such that the defendant was either the direct cause of, or actively engaged in, direct infringement. Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 666 (9th Cir. 2017).  The Ninth Circuit recently held that to demonstrate volitional conduct, a plaintiff "must provide some evidence showing [the alleged infringer] exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution" of copyrighted material.  VHT, Inc. v. Zillow Grp., Inc., 918 F.3d 723, 732 (9th Cir. 2019) (internal quotation and citation removed).

Annabooks unambiguously owns the Work.  The issue here is whether Issuu has violated one of Annabooks' exclusive rights with sufficient volitional conduct to establish a prima facie case.

Although Annabooks' Complaint does not name the specific exclusive § 106 rights that Issuu has allegedly infringed, Annabooks appears to allege that Issuu violated Annabook's

5

exclusive right to distribute the Work under 17 U.S.C. § 106(3). See Compl. ¶ 21 ("unlawful[] distribut[ion]"). Annabooks alleges that Issuu "cause[d] and effectuate[d] the infringing act" by transmitting copies of the Work from Issuu's servers to users' computers. Id. ¶ 21.

Issuu argues that "[a]llegations that a defendant passively hosted materials and simply allowed users to upload and view images, are insufficient to state a claim for direct infringement." MTD at 12 (citing Perfect 10, 847 F.3d at 668). In Perfect 10, the Ninth Circuit agreed with the district court's 12(b)(6) dismissal of the plaintiff's distribution right-based theory of direct infringement because "distribution happen[ed] automatically" and the defendant "did not play an active role" in causing the distribution to occur. Perfect 10, 847 F.3d at 669. Issuu cites Perfect 10 to argue that its distribution is similarly "automatic" because its website "only permits users to upload works and permits other users to request these works from the servers." MTD at 12. Issuu therefore argues that it committed no volitional act.

In its Opposition, Annabooks argues that its "Complaint does allege that Defendant made the decision to require no proof of copyright ownership and the decision to ignore obviously piratical copies except when reported. These are volitional acts." Opp'n at 6. But that allegation does not actually appear in the Complaint. See generally Compl. Nor is its allegation that Issuu generally ignores "obviously piratical copies" of other works pertinent to this direct infringement claim. See Compl. ¶ 4.

Beyond the thicket of volitionality, Annabooks' Complaint suffers a more obvious defect. While Annabooks alleges generally that Issuu "transmit[s] copies of [infringing] works from its servers to the computers of its users," Annabooks makes no allegations regarding the transmission of this Work specifically—for instance, Annabooks does not allege that Issuu ever sold the Work, or that a single Issuu user ever downloaded or even viewed the Work. Compl. ¶¶ 19–26. This omission is critical in the Ninth Circuit, where infringement of the distribution right requires "actual dissemination" of a work. See, e.g., Fox Broad. Co. v. Dish Network LLC, 160 F. Supp. 3d 1139, 1165 (C.D. Cal. 2015) ("Under the Copyright Act, distribution is defined as actual dissemination of a copy that changes hands.") (internal quotations and citation omitted).

Because Annabooks has not plausibly alleged that Issuu ever distributed the Work beyond

6

making available a digital copy through automated processes, this Court GRANTS Issuu's motion to dismiss with respect to direct infringement. Annabooks may amend its Complaint to include specific allegations of actual dissemination and specific allegations of volitional conduct.

### 2. Vicarious Liability for Infringement

Issuu also contends that Annabooks fails to state a claim of vicarious liability for infringement. MTD at 12. Vicarious liability for infringement requires that the defendant "[1] has the right and ability to supervise the infringing activity and also [2] has a direct financial interest in such activities." Napster, 239 F.3d at 1022. Issuu argues that Annabooks fails to plausibly allege both elements. MTD at 13.

First, Issuu argues that Annabooks fails to plausibly allege the "financial interest" or "financial benefit" element of vicarious liability. MTD at 13. "[F]inancial benefit exists where the availability of infringing material acts as a draw for customers." Perfect 10, 847 F.3d at 673 (noting the "essential aspect" of the inquiry "is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits"). Here, although Annabooks alleges that Issuu generates revenue by charging a fee to download works, Annabooks does not allege that Issuu charged a fee to download the Work specifically or that any Issuu user ever downloaded the Work. See generally Compl.; see also MTD at 13 ("Nor are there any allegations that Issuu received compensation or revenue specifically from the work at issue.") Although Annabooks argues in its Opposition that "the republication of the infringing material along with all the other material in Defendant's online library provided revenue from user fees and advertising," Opp'n at 6, Annabooks mentions neither user-fee nor advertising revenue in its Complaint. See Compl. Thus, Annabooks has failed to plausibly allege the "financial benefit" element of vicarious liability.

Second, Issuu argues that Annabooks fails to plausibly allege the "right and ability to supervise" element of vicarious liability. MTD at 13. In the Ninth Circuit, a defendant's "right and ability to supervise" can include a "right to control access to its system" and an "ability to block infringers' access to a particular environment for any reason whatsoever." Napster, 239

1   F.3d at 1023.  Construing the Complaint as liberally as possible, Annabooks' allegation that Issuu

2   removed the Work from its library following the receipt of Annabooks' DMCA takedown notice,

3   see Compl. ¶ 18, implies that Issuu has the right and ability to control infringers' use of its

4   platform.  See Napster, 239 F.3d at 1023.  On that basis, Annabooks has plausibly alleged the

5   "right and ability to supervise" element of vicarious liability.

6   But because Annabooks failed to plausibly allege the requisite "financial benefit" element,

7   this Court grant Issuu's 12(b)(6) motion with respect to vicarious liability.  Annabooks may

8   amend to correct this defect.

### 3. Contributory Liability for Infringement

10  Finally, Issuu argues that Annabooks fails to plausibly plead contributory liability.  MTD

11  at 14.  Contributory liability traditionally requires that "one . . . with knowledge of the infringing

12  activity, induce[], cause[] or materially contribute[] to the infringing conduct of another."

13  Napster, 239 F.3d at 1019 (finding that liability exists when the defendant "engages in personal

14  conduct that encourages or assists the infringement") (internal quotations and citation omitted).

15  Contributory liability requires that the secondary infringer knows or has reason to know of

16  direct infringement.  See id. at 20.  Annabooks argues that its Complaint plausibly alleges that

17  Issuu "had constructive knowledge [of the alleged infringement] from continuing reports that its

18  library contained infringing material, yet failed to exercise any diligence to abate them."  Opp'n at

19  6.  But other than Annabooks' May 5, 2020 DMCA takedown notice to Issuu, the Complaint

20  makes no mention of these "continuing reports."  And any such reports would likely not be about

21  the Work specifically, as Annabooks became aware of the infringing copy in May 2020, just days

22  before sending the takedown notice.  See Napster, 239 F.3d at 1020–22 (refusing to "impute the

23  requisite level of knowledge" because defendant's file-sharing technology "may be used to

24  infringe plaintiffs' copyrights" but imposing liability where defendant had "actual knowledge [of]

25  specific infringing material" and failed to remove it); see also Luvdarts, LLC v. AT&T, 710 F.3d

26  1068, 1072–73 (9th Cir. 2013) (finding that requisite knowledge requires more than a "generalized

27  notification that infringement is occurring"); Compl. ¶ 17.  Because Annabooks has not plausibly

28  alleged that Issuu had knowledge of the infringing copy of the Work specifically, Annabooks has

failed to plausibly plead that Issuu knew or had reason to know of direct infringement.  Therefore, this Court GRANTS Issuu's 12(b)(6) motion with regard to contributory liability, with leave for Annabooks to amend the complaint if it can plausibly allege that Issuu had knowledge of the infringing Work.

## IV.   CONCLUSION

For the foregoing reasons, this Court GRANTs Issuu's motion to dismiss.  Annabooks has leave to amend the Complaint within 30 days if its pleading defects can be corrected in good faith.

**IT IS SO ORDERED.**

Dated: September 24, 2020



CHARLES R. BREYER
United States District Judge